# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: H.S., T.S., D.S., K.S., & M.S.**

**No. 14-1092** (Jackson County 14-JA-8 through 14-JA-14)

**FILED**

March 16, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, by counsel D. Shane McCullough, appeals the Circuit Court of Jackson County's October 9, 2014, order terminating his parental rights to H.S., T.S., and D.S., and his custodial rights to K.S. and M.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Michael W. Asbury Jr., filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in denying him a post-adjudicatory improvement period, in basing termination upon several erroneous findings, and in making erroneous evidentiary rulings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2014, the DHHR filed an abuse and neglect petition against the parents that was subsequently amended four times. The various petitions alleged that the parents abused the children through repeated sexual abuse, forced drug use, physical abuse, and neglect. Specifically, the petitions alleged that petitioner's wife, with his knowledge, forced their seventeen-year-old daughter, S.S., to have sex with an elderly uncle for money, that petitioner allowed the same daughter to be fondled by a neighbor who was a registered sex offender, and that petitioner never notified law enforcement about these incidents. The petitions further alleged that the mother abused controlled substances in the children's presence, forced the children to consume drugs and alcohol, and grew marijuana in the home. The petitions also alleged that the children were subjected to neglect and squalid living conditions, and that the children had previously been removed because of sexual abuse allegations. According to the DHHR, petitioner had a lengthy history of DHHR and Child Protective Services ("CPS") involvement.

---

[1]This case originally concerned seven children. However, one child was not petitioner's biological child and another child reached the age of majority during the pendency of the proceedings below. As such, petitioner appeals only the rulings in regard to the children named herein, H.S., T.S., D.S., K.S., and M.S., and the Court addresses only these children in this memorandum decision.

In March of 2014, the circuit court held the first of several adjudicatory hearings that culminated in an August 4, 2014, final adjudicatory hearing. Over the course of the adjudicatory hearings, the circuit court heard testimony from several individuals, including CPS personnel, the parents, and four of the children, who testified in camera. One child, S.S., testified that petitioner forced her to stay with a neighbor, J.S., who is a registered sex offender. According to S.S., J.S. touched her sexually during these visits and petitioner was aware of these prior instances of sexual abuse. Further, petitioner admitted to having S.S. stay with J.S., but he denied knowing S.S. was a sex offender or about past instances of sexual abuse.

By order entered on August 27, 2014, the circuit court adjudicated each child as abused and neglected and petitioner as an abusing parent. Based upon the adjudicatory evidence, the circuit court made numerous findings of fact in regard to the DHHR's allegations. The circuit court noted that petitioner's denials lacked credibility, especially in light of at least one other child testifying that he knew J.S. was a sex offender. And while not alleged in the petition, the circuit court further found that a younger child, T.S., was discovered by another child, D.S., bound with rope in a bedroom with J.S. D.S. had to use a pocket knife to cut the rope and free T.S.

The circuit court went on to find that S.S. was forced to have sex with her uncle, was paid $50 for the act, and split the money with petitioner and her mother. Moreover, the circuit court found that "after [petitioner] learned of this incident of sexual abuse, he did not alert authorities." The circuit court made additional findings about other instances of S.S. being sexually abused, including a 2012 incident in which petitioner's friend sexually abused the child. Petitioner, upon learning of the incident, did not contact authorities. Another incident occurred in petitioner's home, and after the child informed her parents, they continued to let the perpetrator reside in the home. Both instances of sexual abuse resulted in criminal investigations, one of which was ongoing at the time of adjudication and the other concluded with the perpetrator's conviction. Further, the circuit court specifically found that S.S. was engaged in a sexual relationship with thirty-three-year-old S.T. in petitioner's home, and that S.T. was later found to be the father of S.S.'s infant child. As such, the circuit court found that, despite the family's long history with CPS, the conditions of abuse and neglect persisted in the home.

Beyond the sexual abuse allegations, the circuit court also made extensive findings in regard to other abuse against the children, including the following: being struck physically if they refused to drink alcohol; being otherwise physically beaten by petitioner; being locked in a room and forced to fight each other, with the loser of the fight being subjected to physical punishment by the parents; and being exposed to domestic violence in the home. Based upon this voluminous evidence, the circuit court specifically found that the children were subjected to physical, mental, and emotional injury, and that petitioner was an abusing parent. Additionally, though the petition initially alleged that petitioner sexually abused S.S., the circuit court found at adjudication that there was "no credible evidence . . . that [petitioner] was sexually abusing" the child.[2]

---

[2]The children's mother voluntarily relinquished her parental rights to the children at the adjudicatory stage of the proceedings below.

In September of 2014, the DHHR moved for termination of petitioner's parental rights. Petitioner moved for a post-adjudicatory improvement period, which both the guardian and the DHHR opposed. That same month, the circuit court held a dispositional hearing, denied petitioner's motion for a post-adjudicatory improvement period, and terminated his parental rights to H.S., T.S., and D.S., and his custodial rights to K.S. and M.S. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period, its factual findings, termination of petitioner's parental and custodial rights, or in its evidentiary rulings.

To begin, the Court finds no error in the circuit court denying petitioner's motion for a post-adjudicatory improvement period. Simply put, petitioner's failure to acknowledge the conditions of abuse and neglect in the home prevented him from obtaining an improvement period. West Virginia Code § 49-6-12(b)(2) provides circuit courts discretion in granting post-adjudicatory improvement periods upon a showing that the parent will fully participate in the same. While petitioner argues that he satisfied this burden by divorcing his wife, enrolling in a literacy program, and moving to a new location, among other factors, the Court disagrees. The only evidence that petitioner was likely to fully participate in a post-adjudicatory improvement period was petitioner's own self-serving testimony. On the contrary, the circuit court was presented with ample evidence that petitioner was unlikely to comply with an improvement period, including the fact that the extensive services in the home prior to this proceeding failed to remedy the conditions of abuse and neglect therein.

Further, the evidence clearly established that petitioner failed to acknowledge any responsibility for the children's abuse or neglect in this matter. This was supported by testimony from Dr. Timothy Saar, who performed petitioner's psychological evaluation. During the evaluation, petitioner "denied any responsibility for the actions that led to the filing of the abuse and neglect petition in this matter." Further, the circuit court found that during his testimony

below, petitioner "continued to deny many of the issues of which he has been adjudicated an 'abusing parent.'" As such, the circuit court had substantial evidence upon which to find that petitioner failed to accept personal responsibility for any of the abuse or neglect in the home. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). For these reasons, the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Next, the Court finds no error in the circuit court's evidentiary findings that formed a basis for termination of petitioner's parental and custodial rights. In support of this allegation, petitioner takes issue with the following six findings below: (1) that he engaged in sexual exploitation of S.S.; (2) that he failed to accept responsibility for his actions that led to the petition's filing; (3) that he abandoned services; (4) that he did not respond to or follow through with a reasonable family case plan; (5) that he was incapable of exercising proper parenting skills with the assistance of training due to his intellectual inability and personality disorder; and (6) that he was unable or unwilling to comply with the terms and conditions of an improvement period. The Court will address each alleged error in turn.

As to petitioner's allegation that the circuit court erred in finding he sexually exploited S.S., the Court finds that the circuit court was presented with ample evidence upon which to make this finding. This includes testimony from S.S. confirming that petitioner forced her to stay with J.S. despite knowing the man was a registered sex offender and had touched S.S. sexually, and also that petitioner knew she was forced to have sex with her uncle and shared in the profits. In making this finding, the circuit court noted that it did not find petitioner's testimony credible because he "knew or should have known that his friend, [J.S.] to whom he speaks every day, was a sex offender." This is especially true in light of testimony from one of the children, D.S., that the child knew J.S. was a registered sex offender and was scared of him. Moreover, the circuit court specifically found that "[t]he evidence is uncontradicted that after [petitioner] learned of [the] incident [in which S.S. was forced to have sex with her uncle], he did not alert authorities." While petitioner argues that the circuit court erred in making this finding upon S.S.'s testimony because she later recanted, the circuit court specifically found that S.S.'s contradictory dispositional testimony lacked credibility in light of the fact that S.S. was living in close proximity to, and interacting with, petitioner. Further, S.S.'s prior foster mother testified that shortly before S.S. left the house to return to petitioner, S.S. told the foster mother that she would be expected to have sex with petitioner. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997).

4

For these reasons, the Court finds no error in the circuit court basing termination upon the finding that petitioner sexually exploited S.S.

As to petitioner's allegation that the circuit court erred in finding that he failed to accept responsibility for his actions that led to the petition's filing, the Court finds no error. As outlined above, the circuit court was presented with ample evidence upon which to make this finding, including testimony from the evaluating psychologist and petitioner's own testimony. In support of this argument, petitioner states that he admitted to failing to protect the children from their mother and subsequently remedied this issue by divorcing her. However, this argument illustrates petitioner's failure to acknowledge his own actions that constituted abuse and neglect of the children and only reinforces the circuit court's finding on this issue.

As to petitioner's argument that the circuit court erred in finding that he abandoned services, the Court finds no merit to this argument. Petitioner asserts that the DHHR offered him few services to begin with and, that once he moved to Fayette County, West Virginia to distance himself from his sex offender neighbor, the DHHR failed to re-initiate services. Upon our review, the Court finds that the circuit court's finding in this regard is not erroneous. This issue is irrelevant given the fact that the DHHR was not required to offer petitioner any services due to the aggravated circumstances of the case, namely sexual abuse. Pursuant to West Virginia Code § 49-6-5(a)(7)(A), the DHHR is not required to make reasonable efforts to preserve the family in situations in which a child has been subjected to sexual abuse, among other conditions. The circuit court in this matter correctly found that "[t]he DHHR is not required in this case to make reasonable efforts . . . to preserve the family . . . because of sexual abuse." However, the circuit court went on to note that the DHHR did, nonetheless, provide petitioner services in an attempt to remedy the conditions of abuse and neglect. As such, it is disingenuous for petitioner to argue he was not provided with sufficient services when the same were not required of the DHHR.

As to petitioner's assertion that the circuit court erred in finding that he did not respond to or follow through with a reasonable family case plan and that he was incapable of exercising proper parenting skills with the assistance of training due to his limited intellectual inability and personality disorder, the Court finds no error. The record shows that the circuit court was presented with sufficient evidence upon which to find that petitioner failed to

> respond to or follow[] through with . . . rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidence by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

This finding was supported in large part by petitioner's own refusal to accept responsibility for his actions in abusing the children. As noted above, petitioner was denied an improvement period because of this failure. Because petitioner refused to acknowledge his own actions in abusing the children, the circuit court was correct in finding that he failed to respond to or follow through with the rehabilitative services offered. While petitioner argues that he complied with services by divorcing his wife, moving away from his sex offender neighbor, and securing new housing, these actions do no constitute sufficient action on petitioner's part. As the circuit court specifically found, petitioner's failure to acknowledge his role in the children's abuse "amounts

5

to a refusal on his part to participate in the development of a reasonable family case plan designed to reunify [petitioner] with his children."

Pursuant to West Virginia Code §§ 49-6-5(b)(2) and (3), petitioner's refusal to develop a family case plan and his failure to respond to or follow through with rehabilitative services both constitute situations in which there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected. In light of the substantial evidence supporting these two findings, it is unnecessary to address the appropriateness of the circuit court's finding that petitioner was incapable of exercising proper parenting skills with the assistance of training due to his limited intellectual inability and personality disorder, although the circuit court was also presented with substantial evidence supporting this finding. Such a finding would also constitute a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected and was, frankly, superfluous given the voluminous evidence supporting the circuit court's other findings in this regard. As such, the Court finds no error in these findings and further notes that the circuit court found that termination of petitioner's parental and custodial rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

Finally, the Court finds no error in the circuit court's evidentiary rulings below. Specifically, petitioner alleges that the circuit court erred in admitting irrelevant evidence concerning his extended history with the DHHR and in denying him the opportunity to question a law enforcement officer in regard to his alleged sexual abuse of S.S. First, the Court notes that the evidence that petitioner alleges was erroneously excluded was wholly irrelevant. Pursuant to Rule 401(b) of the West Virginia Rules of Evidence, evidence is relevant if it "is of consequence in determining the action." At one of the adjudicatory hearings, petitioner sought to introduce testimony from a law enforcement officer who investigated the allegations that petitioner sexually abused his daughter. However, the circuit court had already determined that "there is no credible evidence before the [circuit c]ourt that [petitioner] was sexually abusing [S.S.]" The circuit court further included this finding in the final adjudicatory order. As such, it is clear that evidence supporting petitioner's assertion that he did not sexually abuse the child was not of consequence in determining the outcome of this action and, thus, was properly excluded.

However, the circuit court's admission of evidence related to petitioner's lengthy history with the DHHR was relevant and properly admitted. According to Rule 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." While petitioner argues that his DHHR history was irrelevant because he successfully completed prior services, the Court disagrees. As respondents argue, this evidence was highly relevant to a number of issues, including petitioner's ability to comply with services if granted an improvement period and also his ability to correct the conditions of abuse and neglect in the home. Because this evidence had a tendency to make a fact more or less probable and the fact was of consequence in determining the action, the Court finds that it was relevant and properly admitted.

For the foregoing reasons, we find no error in the decision of the circuit court and its October 9, 2014, order is hereby affirmed.

6

                                  Affirmed.

**ISSUED**: March 16, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II